UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY HESS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> VALERO SERVICES, INC., an unknown business entity; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:23-cv-04578-WLH-SK <br><br> **ORDER RE PLAINTIFF'S MOTION TO REMAND [10]** |

Neither party filed a written request for oral argument stating that an attorney with five years or less of experience would be arguing the matter. *See* Standing Order for Newly Assigned Civil Cases at 15. Further, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court has deemed this matter suitable for decision without oral argument.

///

This is a putative class action. Before the Court is Plaintiff Anthony Hess's Motion to Remand. (Docket No. 10). For the reasons below, the Court **DENIES** Hess's Motion.

## I.  BACKGROUND

Hess filed this action in California Superior Court on March 28, 2023, against his former employer, Defendant Valero Services, Inc. ("Valero"). (Decl. of Ryan H. Crosner in Support of Notice of Removal ("Crosner Decl."), Docket No. 1-1, Exh. A). Hess alleges that Valero violated the California Labor Code by, *inter alia*, failing to pay minimum and straight time wages, failing to pay overtime wages, failing to provide meal periods and rest periods, and failing to timely pay final wages at termination. (*Id.*). Specifically, Hess alleged that Valero "maintained a policy and practice of not paying Plaintiff and the Class for all hours worked, including minimum, straight time, and overtime wages" throughout the class period and that "[a]t all times relevant hereto, Plaintiff and the Class have worked more than eight hours in a workday." (*Id.* ¶¶ 15, 43). Hess also alleges that Valero had a "policy and practice" of "fail[ing] and refus[ing] to timely pay Plaintiff and the Class all final wages due at their termination of employment." (*Id.* ¶ 19).

On June 9, 2023, Valero removed the action to federal court pursuant to the Class Action Fairness Act ("CAFA"), codified in relevant part at 28 U.S.C. §§ 1332, 1441(a), 1446, and 1453.

Under CAFA, the federal court has jurisdiction over class actions "if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing 28 U.S.C. § 1332). Valero supported its assertion that the amount in controversy exceeds $5 million by relying on the declarations of two executives in its Human Resources Department. (*See* Decl. of Tim Tadler ("Tadler Decl."), Docket No. 1-2 ¶ 1; Decl. of Mike Sumter ("Sumter Decl."), Docket

No. 1-3 ¶ 1). The executives reviewed payroll and timekeeping records, among other documents, from the entire class period. (Tadler Decl. ¶¶ 8, 10; Sumter Decl. ¶ 4). From the data collected by the Human Resources executives, Valero established the following:

- The likely number of putative class members is 719 (Notice of Removal ¶ 28);
- The number of non-exempt employees who terminated employment with Valero during the class period is 170 (*Id.* ¶ 40);
- The putative class members worked a total of 468,657 shifts during the class period (*Id.*);
- Assuming five shifts a week, the estimated number of workweeks worked by putative class members during the class period was 93,731.4 (*Id.* ¶ 29 n.3);
- The average hourly rate during the class period was "at least $46.457" (*Id.* ¶ 28); and
- The average hourly minimum wage during the class period was $13.54 (*Id.* ¶ 29 n.2).

Valero then made the following assumptions and calculations:

- Assuming one hour of unpaid wages per employee per workweek, the amount in controversy on Hess's unpaid minimum wage claim is **$1,269,123.16** ($13.54 x 1 hour x 93,731.4 workweeks) (*Id.* ¶ 29);
- The amount in controversy for liquidated damages, which are recoverable "in an amount equal to the wages unlawfully unpaid and interest thereon" under Cal. Lab. Code § 1194.2(a), is also **$1,269,123.16** (*Id.* ¶ 31);
- Assuming one hour of unpaid overtime per employee per workweek, the amount in controversy on the unpaid overtime claim is **$6,531,719.47** ($46.457 average hourly wage x 1.5 hour's wages per overtime hour x

3

  93,731.4 workweeks) (*Id.* ¶ 36);

- Assuming all non-exempt employees who terminated their employment with Valero are owed the full waiting period penalty for non-payment of final wages—which, under Cal. Lab Code § 203, is equal to a days' wages for every day the wages were unpaid, including unpaid overtime and minimum wages, up to a maximum of 30 days—the amount in controversy on the claim for untimely final wage payouts is **$1,844,141.52**[1] (*Id.* ¶ 41);

- Based on attorney's fees totaling 25% of the common fund, the amount in controversy on Hess's prayer for attorney's fees is **$2,728,526.83** (*Id.* ¶ 45); and

- The total amount in controversy is **$13,642,634.13** (*Id.* ¶ 47).

On July 10, 2023, Hess filed this Motion to Remand, arguing that Valero failed to carry its burden to establish that, based on reasonable assumptions, the amount in controversy exceeds $5 million. (Mot. to Remand).

## II.  LEGAL STANDARD

When removing a class action under CAFA, "a removing party must initially file a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 81 (2014)).  If the plaintiff challenges defendant's amount in controversy allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin*, 574 U.S. at 82.  "[W]hen calculating the amount in controversy, the parties need not predict the trier of fact's eventual award

---

[1] The formula Valero used for this calculation is not clear.  By the Court's math, the total should be $1,895,445.60 (170 former employees x 30 day waiting penalty x 8-hour workday x 46.457 average hourly wage).  It is unnecessary to resolve the calculation for the purposes of this motion.

4

with one hundred percent accuracy." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (quotation omitted). Rather, "the removing party must be able to rely on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million, as long as the reasoning and underlying assumptions are reasonable." *Id.* (quotation omitted). Importantly, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin*, 574 U.S. at 89.

### III. DISCUSSION

Defendant has met its burden of showing, by a preponderance of evidence and based on reasonable assumptions, that the amount in controversy exceeds $5 million.

The evidence for removal in this case bears comparison to that in *Jauregui,* 28 F.4th 989. In that case, the Ninth Circuit reversed a district court's remand order and found that the defendant, Roadrunner, had satisfied its burden of proving the amount in controversy exceeded $5 million. To meet this burden, Roadrunner "relied primarily on the declaration of its senior payroll lead" who reviewed the company's payroll data. *Id.* at 991. The Ninth Circuit found that Roadrunner provided "provided substantial evidence and analysis supporting its amount in controversy estimate." *Id.* at 994.

The Court takes judicial notice of the evidence Roadrunner provided in that case.[2] Specifically, the Court takes judicial notice of Roadrunner's Opposition to Plaintiff's Motion to Remand and the declaration of the senior payroll lead therein. *Jauregui v. Roadrunner Transp. Servs., Inc.*, No. 2:21-cv-04657-RGK-PD, Docket No. 15. The allegations in that case are almost identical to those in Hess's Complaint. *See, e.g.*, *id.* at 7–8. Just as Valero does here, Roadrunner assumed one hour of unpaid overtime per workweek (*Id.* at 9), one hour of unpaid wages per workweek for the purposes of the

---

[2] *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[U]nder Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'").

minimum wage claim (*Id.* at 10–11), and the full 30 days of waiting time penalties, (*Id.* at 13–14). Roadrunner relied on formulas and analyses that were no more complex than those Valero relies on. (*See generally id.*). The Ninth Circuit's finding that Roadrunner "provided substantial evidence and analysis" to support its claim regarding the amount in controversy counsels a finding here that Valero's analysis and evidence suffices.

Valero's calculation of the overtime claim—which exceeds $6.5 million—is enough on its own to confer jurisdiction under CAFA. (*See* Notice of Removal ¶ 36). Again, Valero assumed one hour of unpaid overtime per employee per workweek, and it calculated the amount based on the average hourly rate for members of the putative class over the class period. The assumptions underlying the calculation were reasonable given that Hess alleges that Valero had a "pattern and practice" of failing to pay overtime wages, and that throughout the class period, "Plaintiff and the Class have worked more than eight hours in a workday," necessitating overtime pay. (Crosner Decl., Exh. A ¶¶ 15, 43). Indeed, Valero's assumption of one unpaid hour of overtime per employee per week has been approved by numerous courts in this circuit on similar claims. *See, e.g.*, *Mariscal v. Arizona Tile, LLC*, No. 8:20-cv-02071-JLS-KES, 2021 WL 1400892, at *5 (C.D. Cal. 2021) (assumption of one hour unpaid overtime per week reasonable where plaintiff alleged "pattern and practice" of failing to pay overtime); *Gant v. ALDI, Inc.*, No. LACV1903109JAKPLAX, 2020 WL 1329909, at *5 (C.D. Cal. Mar. 20, 2020) (same); *Harmon v. RDO Equip. Co.*, No. EDCV1802602JVSKKX, 2019 WL 4238878, at *5 (C.D. Cal. Feb. 14, 2019) (same); *Danielsson v. Blood Centers of Pac.*, No. 19-CV-04592-JCS, 2019 WL 7290476, at *7 (N.D. Cal. Dec. 30, 2019) (same); *Kastler v. Oh My Green, Inc.*, No. 19-CV-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (same); *Mortley v. Express Pipe & Supply Co.*, 2018 WL 708115, at *4 (C.D. Cal. 2018), at *4 (same); *Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. 2014) (same).

Since the overtime claim alone exceeds $5 million, the Court need not address

Valero's other calculations. Valero has met its burden to establish CAFA jurisdiction.

## IV. CONCLUSION

Because Valero has met its burden to prove the amount in controversy exceeds $5 million, the Court **DENIES** Hess's Motion to Remand.

**IT IS SO ORDERED.**

Dated:  August 22, 2023

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE